# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| LEETRAVIS GRIFFIN, | |
| Petitioner, | |
| v. | CAUSE NO. 3:25-CV-801-TLS-AZ |
| WARDEN, | |
| Respondent. | |

## OPINION AND ORDER

LeeTravis Griffin, a prisoner without a lawyer, filed an amended habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging his 2013 conviction in St. Joseph County under Case No. 71D08-1301-MR-000001. (ECF 7.) In accordance with Rule 4 of the Rules Governing Section 2254 Cases, the court must review the petition and dismiss it "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]"

I.   BACKGROUND

Griffin was found guilty of murder, burglary, and robbery. *Griffin v. State*, 16 N.E.3d 997, 1003 (Ind. Ct. App. 2014).[1] The Indiana Court of Appeals set forth the facts underlying his conviction as follows:

> On the night of December 27, 2012, Tyler Jordan, Autumn Jordan, and Christine Jordan gathered at the home of Kent and Sandra Price ("the home"), who are relatives of the Jordans. Also present at the home was Kent's daughter, Klarisa, and a few of her friends.
>
> At approximately 9:30 p.m., Tyler made his way from the home's second-floor bedroom to the home's first floor kitchen, located at the rear of the home. While there, Tyler heard a knock on the back door, which entered into the kitchen. When Tyler pulled back the door's curtains to see outside, Walter Neely forced open the door and entered the home. Neely grabbed a knife from the kitchen butcher block

---

[1] The court is permitted to take judicial notice of public records in ruling on the petition. *See* Fed. R. Evid. 201.

and cut Tyler's hands before pushing him to the floor. Four other men, including Griffin, then entered the home wearing ski or surgical masks.

After the men entered, one of the men climbed on top of Tyler, placed his hand over Tyler's mouth, and instructed him "to shut up, to be quiet." While some of the other men went upstairs, this man, armed with a revolver, took Tyler to the basement. Tyler blacked out for a time soon thereafter and, while he could not specifically recall, he subsequently reported that he believed his attacker had knocked him unconscious.

When Tyler regained consciousness, he "didn't look up" but heard the man searching the basement. The man noticed that Tyler was awake and asked Tyler whether he or his uncle knew the codes to the Prices' safes. The man then went upstairs, but, before doing so, he pointed his gun at Tyler, cocked it, and commanded him, "[D]on't move or I'll kill you." Tyler could hear screaming and stomping emanating from the home's upper levels.

Thereafter, at least two men—Neely and the man with the gun—"busted through the door" to a second-floor bedroom where everyone but Klarisa and her friends had gathered. The two men stormed into the room. Kent was knocked down, and Christine, who jumped onto Neely, was "slung" to the ground. Neely swung at both Kent and Christine with the knife. The second man pointed the gun at Christine, threatened her life, and ordered her to the bathroom. He also threatened to kill Sandra.

The men demanded money, jewelry, guns, and the home's safes, and they ransacked the bedroom. Meanwhile, a third intruder, also armed with a knife, made his way to the third-floor bedroom where Klarisa and her friends were located. The man searched the room for valuables, taking several items, but did not locate Klarisa or her friends, who hid when they heard the commotion below.

At some point, Klarisa and her friends were able to call 9–1–1. Christine had also managed to call 9–1–1. Officers with the South Bend Police Department responded to the calls and surrounded the home. As the intruders attempted to flee the home, the police apprehended them. Griffin was among those apprehended, and he was still inside the house when the police ordered him out. Griffin, accompanied by another intruder, exited through the home's rear entrance. When officers arrested him, Griffin wore black clothes and a surgical mask but was unarmed.

When the officers entered the home, they discovered Kent and Sandra had sustained serious injuries from knife wounds from Neely's attack. Sandra subsequently died from her injuries, which included a wound to her neck. The officers also found several items of property collected at the rear door of the home and a black duffel bag full of the Prices' property in the dining room.

2

> Officers transported Griffin to the South Bend Police Department. En route, without being prompted or questioned, Griffin repeatedly expressed that he knew he had acted wrongfully and stated that "he messed up, he messed up, he even drug his brothers into this." While awaiting formal questioning at the station, Griffin talked to himself, and he expressed his belief that no confession would be needed because he and his confederates had been caught, would tell the same story, and he would go to prison.
>
> The following day, the State charged Griffin with two counts of robbery and two counts of burglary, all as Class A felonies. After Sandra died, the State amended its information and charged Griffin with two counts of felony murder, which corresponded to the State's allegations that Griffin had committed robbery and burglary against Sandra. The State's allegations of robbery were based on a theory of accomplice liability.

*Id.* at 1000–02 (cleaned up).

Following a jury trial, Griffin was convicted and sentenced to an aggregate term of 115 years in prison. *Id.* at 1002–03. He appealed, and the Indiana Court of Appeals affirmed his conviction in September 2014. *Id.* at 1008. He did not seek transfer to the Indiana Supreme Court. (ECF 7 at 1.)

In September 2015, he filed a post-conviction petition in St. Joseph Superior Court. *Griffin v. State of Indiana*, No. 71D08-1509-PC-000038 (St. Joseph Sup. Ct. closed Mar. 31, 2025). His petition was ultimately denied, and the Indiana Court of Appeals affirmed the denial of post-conviction relief. *Griffin v. State*, 255 N.E.3d 448 (Table), 2025 WL 401197, at *5 (Ind. Ct. App. Feb. 5, 2025). He sought transfer to the Indiana Supreme Court, but his petition was denied on July 22, 2025. *Griffin v. State*, 265 N.E.3d 992 (Ind. 2025).

On September 18, 2025, Griffin filed his federal petition. (ECF 1 at 5.) He raised four claims: a claim of error by the post-conviction court, two claims of ineffective assistance by trial counsel, and a claim of ineffective assistance by his counsel on direct appeal. (*Id.* at 3–4.) On October 28, 2025, he filed his amended habeas petition raising these same claims. (ECF 7.) He

3

states that the amendment was necessary because he made an error when listing the date that he sought state post-conviction relief. (ECF 7-1.)

II.     ANALYSIS

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) contains a strict statute of limitations, set forth as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

As outlined above, the Indiana Court of Appeals affirmed Griffin's conviction on direct appeal on September 11, 2014. *Griffin,* 16 N.E.3d at 1003. At that time, petitions to transfer to the Indiana Supreme Court had to be filed within 30 days of the appellate court's judgment. *See* IND. R. APP. 57(C) (eff. Jan. 1, 2008, to Dec. 31, 2018). Griffin did not pursue relief in the Indiana Supreme Court, and so his conviction became final under 28 U.S.C. § 2244(d)(1)(A) on October 14, 2014, when the time for seeking review in the Indiana Supreme Court expired. *See*

*Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (for habeas petitioners who do not complete all levels of review, judgment becomes final when time for seeking further review expires).[2] As of that date, the one-year clock began running.

State court records reflect that Griffin filed a post-conviction petition on September 18, 2015. *Griffin v. State*, No. 71D08-1509-PC-000038 (St. Joseph Sup. Ct. closed Mar. 31, 2025). Griffin states in his amended federal petition that his post-conviction petition was filed on September 8, 2015. (ECF 7 at 2.) This conflicts with public records. Nevertheless, the court will afford him the benefit of the doubt and will use September 8, 2015, as the operative filing date for purposes of this opinion.

His post-conviction petition filed on September 8, 2015, tolled the federal deadline. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). At that time, 329 days had already elapsed on the one-year clock. The federal deadline remained tolled until the state post-conviction proceedings came to a conclusion on July 22, 2025. *Griffin,* 265 N.E.3d 992. The federal clock began running again and continued to run for 57 days until Griffin filed his original federal petition on September 18, 2025.[3] (ECF 1 at 5.) Thus, a total of 386 days elapsed on the federal clock before Griffin sought federal habeas relief, which is beyond the one-year deadline.

---

[2] The 30th day fell on a Saturday and the following Monday was a legal holiday (Columbus Day), so the deadline was automatically extended to Tuesday October 14, 2014. *See* Ind. R. Trial P. 6(A); Ind. Code. § 1-1-9-1(a).

[3] The court will presume for purposes of this opinion that the amended petition filed on October 28, 2025, relates back to the original petition, as the claims appear identical. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). If the amended petition does not relate back, it would be even more untimely than the original, as an additional 40 days elapsed on the federal clock before he filed his amended habeas petition.

When asked to explain why his petition is timely under the provisions of 28 U.S.C. § 2244(d), Griffin states as follows:

> This petition is being filed during the time which a properly filed inside the one-year period of limitation shall apply to an application of a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.

(ECF 7 at 5) (errors in original). He appears to have miscalculated the deadline, mistakenly believing he had one year from the date the state post-conviction proceedings came to a conclusion to seek federal habeas relief. However, he failed to account for the time that elapsed on the federal clock before he sought state post-conviction relief. He does not argue, nor does the court find a basis to conclude, that his claims involve a new factual predicate or are based on a new Supreme Court case made retroactive to cases on collateral review. He also does not assert that a state-created impediment prevented him from filing his federal petition on time, nor can an impediment be discerned from the record. It appears he simply missed the federal deadline.

The court has considered whether equitable tolling might apply even though Griffin has not expressly invoked this doctrine. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (explaining that the deadline under 28 U.S.C. § 2244(d) is subject to equitable tolling). Equitable tolling is "an extraordinary remedy that is rarely granted." *Mayberry v. Dittmann*, 904 F.3d 525, 529 (7th Cir. 2018) (cleaned up). It applies when some "extraordinary circumstance" beyond the petitioner's control prevented a timely filing. *Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020). Griffin's lack of awareness of the federal deadline or unfamiliarity with applicable law does not provide grounds for tolling. *Id.*; *Davis v. Humphreys*, 747 F.3d 497, 500 (7th Cir. 2014). The fact that he filed the petition a short time after the one-year deadline expired also does not provide grounds for tolling. *See United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (explaining that equitable tolling was not warranted simply because petitioner missed filing

deadline by only one day because "courts have to draw lines somewhere" and "statutes of limitation protect important social interests"). The court concludes that equitable tolling is not warranted under the facts of this case.

Griffin also moves for appointment of counsel. (ECF 6.) A state prisoner pursuing federal habeas relief is entitled to counsel when he is under a death sentence, which Griffin is not. *See* 18 U.S.C. § 3599(a)(2); *McFarland v. Scott*, 512 U.S. 849, 855 (1994). Counsel also must be appointed when the court holds an evidentiary hearing to resolve the petition. *See* Rule 8(c) of the Rules Governing Section 2254 Cases. An evidentiary hearing has not been scheduled nor is there a basis to hold a hearing in this case. *See Shinn v. Ramirez*, 596 U.S. 366, 375–76 (2022).

Therefore, whether to appoint counsel is purely a matter of discretion. *See* 18 U.S.C. § 3006A(a)(2)(B); *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997); *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). The court will abuse its discretion in declining to appoint counsel only "if, given the difficulty of the case and the litigant's ability, [the petitioner] could not obtain justice without an attorney, he could not obtain a lawyer on his own, and he would have . . . a reasonable chance of winning with a lawyer at his side." *Winsett*, 130 F.3d at 281 (cleaned up). As outlined above, Griffin's petition is untimely under the provisions of AEDPA. The court has considered the possibility of tolling but has concluded that tolling is not warranted under the facts of this case. There is no indication Griffin would have a "reasonable chance of winning" if the court were to appoint counsel for him. His motion will be denied.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must consider whether to grant or deny a certificate of appealability. To obtain a certificate of appealability when the petition is resolved on procedural grounds, the petitioner must establish that reasonable jurists would find the court's procedural ruling debatable. *Slack v. McDaniel*, 529 U.S. 473, 484

(2000). As outlined above, Griffin's petition is untimely and he does not provide an arguable basis for excusing the untimeliness. The court finds an insufficient basis to conclude that reasonable jurists would debate the outcome of the petition. He will not be granted a certificate of appealability.

For these reasons, the court:

(1) DENIES the petitioner's motion for appointment of counsel (ECF 6);

(2) DISMISSES the amended petition (ECF 7) pursuant to Rule 4 of the Rules Governing Section 2254 Cases;

(3) DENIES the petitioner a certificate of appealability; and

(4) DIRECTS the clerk to close this case.

SO ORDERED on November 3, 2025.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT